IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Luis Edgardo Cordova and | ) | |
| Migdalia Cordova, | ) | Case No.: 08-06106-ABB-7 |
| | ) | |
| Debtors. | ) | |
| | | |
| Luis R. Esteves, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | A. P. No.: 10-00316-BGC |
| | ) | |
| Migdalia Cordova, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.  Background**

The matter before the Court is the <u>Adversary Complaint</u> filed by the plaintiff Luis Esteves on December 7, 2010. Docket No. 1.[1] After notice, a trial was held on February 22, 2012.  Appearing were: Luis Esteves, the plaintiff; Mario Garcia, the attorney for the plaintiff; Migdalia Cordova, the defendant; and John Rafelli, the attorney for the defendant.  Also appearing was Thomas Vastrick, an expert witness.[2] The matter was submitted on the arguments of counsel, the pleadings and exhibits, and the testimony of Luis Esteves, Migdalia Cordova, and Thomas Vastrick.

The plaintiff contends the defendant forged his name on five checks and created a negative balance in a bank account he had to cover, and that the defendant intentionally gave him two insufficient checks for another debt.  He contends these debts are nondischargeable under Section 523(a)(2)(A) of the Bankruptcy Code as fraud.

---

[1] This adversary proceeding was transferred to the undersigned on August 26, 2011. Docket No. 17.

[2] On the plaintiff's Ore Tenus Motion, the Court entered an order April 17, 2012, dismissing Luis Edgardo Cordova, the defendant's husband, as a defendant.  Docket No. 38.

## II.  Findings of Fact

### A.  Star Tours International

The plaintiff owned Star Tours International, Inc. d/b/a STI Tours ("STI"), a Florida corporation engaged in the business of marketing and selling travel tours. STI held two bank accounts for its business operation.  One was a small business checking account with Banco Popular North America ("BPNA") in Florida.  The other was a flexi-cuenta account with Banco Popular de Puerto Rico ("BPPR"). The flexi-cuenta account in BPPR was a checking account with a line of credit. This account served as a convenience to STI clients located in Puerto Rico, allowing them to deposit payments for travel services at a local bank.

The defendant was an employee of STI. In 2005, the plaintiff offered to sell STI to the defendant. A stock purchase agreement was executed on October 19, 2005. To guarantee a smooth transition of the business' accounts and not disrupt the cash flow of the business, the plaintiff allowed the defendant to continue using the two existing bank accounts.[3]  On January 6, 2006, the defendant and her husband registered their signatures in the BPNA account. Plaintiff's Exhibits 2 and 3. As to the BPPR account, the defendant agreed she would make arrangements to open a new account in her name as soon as possible, which might require her to travel to Puerto Rico. Meanwhile, clients in Puerto Rico continued depositing funds in the BPPR account and checks were drafted from that account. The defendant does not remember ever opening an account in Puerto Rico.

### B.  The Banco Popular de Puerto Rico "BPPR" Account

In October 2005, November 2005, and December 2005, the three months immediately after the stock purchase agreement, the BPPR account checkbook was kept in the plaintiff's office. The plaintiff testified that during these months he wrote checks to the defendant to transfer the funds in the BPPR account since these funds belonged to her as a result of STI's operations. He would verify the available account balance online and fill out the check for a specific amount in the name of STI Tours. The defendant would then come to the office and pick up the checks. In December 2005, plaintiff was leaving town on vacation. He testified that he left approximately two or three signed checks, with Vanessa Barker, his office manager, in the event the defendant needed access to funds while he was away. He testified that he did not sign blank checks. The checks he signed were made to the order of STI and provided an exact monetary amount.[4]

---

[3] The plaintiff's Statement of Factual Matters and Legal Proposition, Docket No. 33, represents that this accommodation would last only, "during the first few weeks." Id. at 2.  As the next paragraph shows, it continued at least three months to January 2006.

[4] Vanessa Barker did not testify.

The plaintiff stated that he did not use the BPPR account after January 2006. He attempted to contact the defendant after February 2006, but he was not able to do so. In May of 2006, BPPR informed him that there was an overdraft in the account. He took out a personal loan with the same institution and paid the overdraft. Plaintiff's Exhibit 11.[5]

The defendant testified that before the plaintiff left on vacation in December 2005, he gave her a checkbook with approximately nineteen to twenty-five pre-signed blank checks.[6] The defendant also testified that this account remained in the plaintiff's name, and the bank statements continued to be mailed to the plaintiff's business address. Plaintiff's Exhibit 8 includes copies of monthly bank statements for November 2005 through November 2006 for the Banco Popular Puerto Rico account. Those statements reflect that the address for the business (and the address to which the statements were sent) was 5859 American Way, Orlando Florida, 32819 – the same address listed for Star Tours International, Inc. in the parties stock purchase agreement (Plaintiff's Exhibit 1 and Exhibit A to the complaint.)

The defendant also testified that because she did not have access to the account balance or the bank statements, she tracked the balance of the account by adding the deposit slips she received from clients in Puerto Rico. She would then write checks based on the deposited amounts. She believed she was authorized to use these checks. She testified she did not know why or how the overdraft occurred.

The BPPR account bank statements from November 2005 thru November 2006 were admitted into evidence. Plaintiff's Exhibit 8.

> In November 2005, deposits totaled $54,938.28. Five checks were drawn for a total of $71,000. The ending balance was $11,164.99.
>
> In December 2005, deposits totaled $117,771.01. Six checks were drawn for a total of $147, 348.45. The ending balance was negative $28,977.68.
>
> In January 2006 deposits totaled $36,215.80. One check for $30,000 was drawn. The ending balance was negative $23,466.56.
>
> In February 2006, deposits totaled $35,980.75. No checks were drafted. The ending balance returned to positive $12,155.02.

---

[5] Plaintiff's Exhibit 11, and others, are written in Spanish. The undersigned must rely on others' representations that these documents include the information that they purport to include.

[6] Clearly, there is a direct conflict of facts. One would expect that the plaintiff's handwriting expert could have resolved these conflicts, but he did not. That is unfortunate for the plaintiff who has the burden of proof.

     In March 2006, deposits totaled $79,202.31. Six checks were drawn for a total of $249,000. The ending balance was negative $159,011.52.

     In April 2006, deposits totaled $144,244.10. Four checks were drawn for a total of $160,000. The ending balance was negative $177,626.71.

     In May 2006, deposits totaled $195,754.34. Three checks were drawn for a total of $105,000. The ending balance was negative $63,836.

     After May 2006, no more checks were drawn and the account showed minor activity. On August 2006, plaintiff paid BPPR the outstanding balance of $65,910.67, bringing the account balance to zero.

     Copies of five of the thirteen checks drawn from the BPPR account between March and May 2006 were admitted as exhibits. They were:

     1.     Check No. 1163 for $65,000 debited on March 28, 2006;

     2.     Check No. 1167 for $65,000 debited on April 21, 2006;

     3.     Check No. 1168 for $60,000 debited on April 27, 2006;

     4.     Check No. 1153 for $30,000 debited on May 18, 2006; and

     5.     Check No. 1155 for $25,000 debited on May 17, 2006.

Plaintiff's Exhibit 5.

     These are the checks the plaintiff contends the defendant forged. He testified the signatures on these checks were not his signature.

     The defendant testified she did not write plaintiff's signature on any of these checks. In contrast, she identified her handwriting on all non-signature entries on the checks. She admitted the checks were deposited in STI's BPNA account and that STI received the funds.

     Mr. Thomas Vastrick, an expert witness on forensic document examination. testified for the plaintiff. Mr. Vastrick had previously examined the handwriting and signatures on the five checks listed above. He compared samples of defendant's handwriting to the non-signature entries in the checks. He also compared the signatures in the checks to samples of the plaintiff's signature. Mr. Vastrick determined that the defendant wrote the non-signature entries on the checks. He also determined the signatures on each of these checks did not correspond to plaintiff' signature samples. He pointed out specific differences between the signature samples and the signatures on each check. The expert determined these signatures are poor attempts to

simulate and copy plaintiff's writing. The expert did not determine who wrote plaintiff's signatures on these checks.

### C.  The Banco Popular North America, "BPNA" Account

The plaintiff and the defendant negotiated a reduced price for the sale of the business. On July 12, 2006, the defendant gave the plaintiff three checks of $15,000 each from the BPNA account, for a total of $45,000. These checks represented payment of her debt under the stock purchase agreement. Defendant testified she told the plaintiff not to cash all three checks immediately because the account had funds available for only one $15,000 check at the time.[7]

Plaintiff's Exhibit 7 includes copies of the bank statements for this account. Those statements reflect that the address for Star Tours International was, for the months October 2005, November 2005, and December 2005, 5859 American Way, Orlando Florida, 32819 – the same address listed for Star Tours International, Inc. in the parties stock purchase agreement (Plaintiff's Exhibit 1 and Exhibit A to the complaint.) The statements for January 2006 forward reflect an address of 5797 Delano Lane, Orlando, Florida. The plaintiff contends that around January 2006 the defendant began operating the business from her home.

Contrary to the defendant's alleged instructions, the plaintiff deposited the three checks. Two of them, Check No. 3502 (Plaintiff's Exhibit 9) and Check No. 3503 (Plaintiff's Exhibit 10) were returned "NSF." Plaintiff was unable to collect that debt.

### III.  Applicable Law

### A.  Burden of Proof

> The party objecting to the dischargeability of a debt pursuant to 11 U.S.C. Section 523(a) carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir.1986). Plaintiff has presented Section 523(a)(2)(A) and Section 523(a)(2)(B) causes of action.

Commonwealth Land Title Insurance Company v. Vermilio (In re Vermilio), 457 B.R. 863, 870 (Bankr. M.D. Fla. 2011)

---

[7] If the defendant gave the plaintiff three checks and told him there was only enough funds for one check at a time, and one check cleared, there is corroborating support for the defendant's testimony.

### B.  Section 523(a)(2)(A)

The plaintiff contends that whatever debt the defendant owes him is not dischargeable in this case pursuant to section 523(a)(2)(A) of the Bankruptcy Code. 11 U.S.C. § 523(a)(2)(A). That section provides that a discharge pursuant to Section 727 does not discharge an individual from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—"

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

Judge Arthur B. Briskman explains in Barnett v. Osborne (In re Osborne), 455 B.R. 247 (Bankr. M.D. Fla.2010) what is necessary to prevail on a claim under section 523(a)(2)(A). He wrote:

> Plaintiffs must establish the traditional elements of common law fraud to prevail in a Section 523(a)(2)(A) action: (1) Debtors made a false representation with the purpose and intent to deceive Plaintiffs; (2) Plaintiffs relied on the misrepresentation; (3) the reliance was justified; and (4) Plaintiffs sustained a loss as a result of the misrepresentation. SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir.1998); Fuller v. Johannessen (In re Johannessen), 76 F.3d 347, 350 (11th Cir.1996). Plaintiffs must establish each of the four common law fraud elements by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); In re Wiggins, 250 B.R. 131, 134 (Bankr. M.D. Fla.2000).
>
> The cornerstone element in a Section 523(a)(2)(A) nondischargeability proceeding is a misrepresentation made with the intent to deceive the creditor. A creditor cannot establish non-dischargeability pursuant to Section 523(a)(2)(A) without proof of reliance on intentional misstatements by the debtor. City Bank & Trust Co. v. Vann (In re Vann), 67 F.3d 277, 280 (11th Cir.1995). A determination of fraudulent intent is an issue of fact and "depends largely upon an assessment of the credibility and demeanor of the debtor...." Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 305 (11th Cir.1994). Intent is a subjective issue and a review of the totality of the circumstances is relevant in determining a debtor's intent. Id.
>
> The creditor's reliance upon the debtor's false representation must be justified. Field v. Mans, 516 U.S. 59, 73–75, 116 S.Ct. 437, 133

> L.Ed.2d 351 (1995); In re Vann, 67 F.3d at 283–84. Whether such reliance is justified is determined by a subjective test. In re Vann, 67 F.3d at 281. "Justifiable reliance is gauged by an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case." Id. (quoting W. Page Keeton, Prosser & Keeton on Torts § 108, at 751 (5th ed. 1984)). A plaintiff must establish a causal link between the debtor's misrepresentation and the resulting loss sustained by the plaintiff. Lightner v. Lohn, 274 B.R. 545, 550 (M.D.Fla.2002).

Id. at 251-52.

## IV.  Conclusions of Law

To review, to prevail, the plaintiff must prove:

(1) Debtors made a false representation with the purpose and intent to deceive Plaintiffs;

(2) Plaintiffs relied on the misrepresentation;

(3) the reliance was justified; and

(4) Plaintiffs sustained a loss as a result of the misrepresentation.

And as Judge Briskman explained, "The cornerstone element in a Section 523(a)(2)(A) nondischargeability proceeding is a misrepresentation made with the intent to deceive the creditor." Id.

The plaintiff's complaint includes two counts. Both are based on section 523(a)(2)(A).  The question is, did the plaintiff prove the above elements for either of these causes of action.

### A.  Count I

Count I reads:

19. Esteves realleges paragraphs 1 though 18 in support of this count.

20. This is an action against Debtors to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(2)(A).

21. Sometime after the closing of the sale and purchase of the Shares, Debtors Cordova, individually, and on behalf of the Corporation,

> represented and warranted to Esteves that the Credit Line had been closed.
>
> 22. From December 2005 through and including April 2006, Debtors Cordova forged Esteves' signature on checks used to draw on the Credit Line, for a total sum of Sixty Thousand and No/1 00 Dollars ($60,000.00).
>
> 23. As a result of Debtors' fraud and forgery, Esteves has been required to pay Banco Popular of Puerto Rico the sum of Sixty Thousand and No/100 Dollars ($60,000.00), which sum is rightfully owed by Debtors.
>
> 24. At all material times Debtor, Luis E. Cordova, knew that his wife was forging such checks, and aided and abetted her in doing so by, without limitation, condoning such actions, and receiving, using, or benefitting from such funds.
>
> 25. Debtors obtained funds from the Credit Line by false pretenses, forgery, false representations, and/or actual fraud.
>
> 26. Accordingly, Plaintiffs above referenced claims should be excepted from the discharge pursuant to §523(a)(2)(A) of the Bankruptcy Code.
>
> WHEREFORE, LUIS R. ESTEVES, respectfully requests this Honorable Court enter a final judgment for damages in the amount of Sixty Thousand and Noll 00 Dollars ($60,000.00), plus prejudgment interests, and court costs, and excepting such Judgment from the Debtors' discharge, and granting such other and further relief as this Honorable Court deems just.

Complaint, Docket No. 1 at 4-5.

Count I seeks damages of $60,000 relating to the plaintiff's contention that the defendant committed fraud when she: (1) forged the plaintiff's signature to checks; and (2) misrepresented the status of the company's line of credit.

### 1. The Forgery Allegation

If proved, forgery constitutes a false representation with the intent to deceive. The plaintiff employed Mr. Thomas Vastrick, an expert witness on forensic document examination, to assist in that proof.

Mr. Vastrick examined five checks the plaintiff contends the defendant forged. Mr. Vastrick explained that he examined these checks and compared the writing on them with samples of writing from both the plaintiff and the defendant. He concluded that the defendant wrote the non-signature entries on the checks. He also concluded that the signatures on each of these checks did not correspond to plaintiff's signature

samples. However, the expert could not offer an opinion on who wrote plaintiff's signatures on these checks.

Based on the expert's testimony, this Court must find that the plaintiff did not prove by a preponderance of the evidence that the defendant forged his signature on the checks. Consequently, as to this first part of Count I, the Court must find for the defendant.

### 2. Representation that the Credit Line would Be Closed

Count I also includes a general allegation of fraud regarding the plaintiff's accusation that the defendant misrepresented the status of the company's line of credit. The import is that through the defendant's alleged fraud, the $60,000 negative balance occurred in the BPPR account which the plaintiff was required to cover. The four factors listed above are particularly pertinent to that allegation.

First, the Court cannot find any evidence in regard to the company's line of credit of any act where the defendant did something with the intent to deceive the plaintiff. But assuming for argument that there was, the real issue is the plaintiff's justifiable reliance on any such misrepresentation.[8] Two important points must be made. One, the bank statements in Plaintiff's Exhibit 8 show that the balance in the BPPR balance fluctuated and that the negative balance of $60,000 occurred over time. Two, during this time, the BPPR account remained in the plaintiff's name and was sent to the STI address at 5859 American Way, but the plaintiff allowed the defendant to continue using the company's bank accounts and line of credit. As such, even if the defendant misrepresented the status of the line of credit, the Court finds that any reliance on that misrepresentation was not justified.

Because the Court finds that there is no evidence that the defendant made a representation with the intent to deceive the plaintiff, and if she did, reliance on that representation would not be justified, the Court must find that the plaintiff did not prove

---

[8] Judge Briskman wrote in Wall Street Management & Capital, Inc., et al. v. Crites (In re Crities), 419 B.R. 890 (Bankr.M.D.Fla. Dec 07, 2009):

> A creditor cannot establish non-dischargeability pursuant to Section 523(a)(2)(A) without proof of reliance on intentional misstatements by the debtor. City Bank & Trust Co. v. Vann (In re Vann), 67 F.3d 277, 280 (11th Cir.1995). The reliance upon the debtor's false representation must be justified. Field v. Mans, 516 U.S. 59, 73–75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); In re Vann, 67 F.3d at 283–84. Whether such reliance is justified is determined by a subjective test. Id. at 281.

Id. at 896.

by a preponderance of the evidence that the defendant committed fraud. Consequently, as to this part of Count I, the Court must find for the defendant.[9]

Count II reads:

27. Esteves realleges paragraphs 1 through 18 in support of this count.

28. This is an action against Debtors to determine the dischargeable of a debt pursuant to 11 U.S.C. § 523(a)(2)(A), in support of this count

29. At all material times, Debtor Migdalia Cordova individually represented to Esteves that there were sufficient funds in the account to pay the amount due under the Checks. Esteves relied on Debtor Cordova's representations of the immediately available funds, in reducing the original amount due under the stock purchase agreement. Debtor Migdalia Cordova knew or should have known that there were insufficient funds in the Corporation's account to pay for the Checks.

30. Accordingly, Plaintiffs above referenced claims should be excepted from the discharge pursuant to §523(a)(2)(A) of the Bankruptcy Code.

Complaint, Docket No. 1 at 5-6.

The plaintiff seeks damages of $30,000 for two "NSF" checks the defendant used to pay him for her debt in purchasing Star Tours International. The plaintiff alleges that the representation with the intent to deceive is the promise of an immediate payment in exchange for a reduction in the debt. The plaintiff argues that the defendant committed fraud by giving him two "NSF" checks rather than paying him those "immediate funds."

Again, the Court cannot find any evidence that the defendant did something with the <u>intent</u> to deceive the plaintiff. The defendant testified that she told the plaintiff not to negotiate all of the checks at the same time. The clear implication is that there were not sufficient funds to cover all of the checks, but there would be later if the plaintiff delayed. When the plaintiff deposited all of the checks, two were returned "NSF," confirming the defendant's representation.

Certainly, delivery of a worthless check can form the basis of a nondischargeable debt. See <u>In re Larsen</u>, Case No. 06-1175, 2007 WL 1729940 (Bankr. D.N.M. Jun 13, 2007) ("A worthless check, or a check for which there are insufficient funds to honor payment, can form the basis of a non-dischargeable debt." <u>Id</u>. at *2 (citing <u>Designed</u>

---

[9] The defendant was an employee of the plaintiff and apparently a good enough one that the plaintiff was willing to sell the defendant his business. The evidence shows that while she was good at that service end of the business, she was not regarding the finances.

Flooring Distributors, Inc. v. Wagenti (In re Wagenti), 110 B.R. 602, 604 (Bankr. S.D. Fla.1990) for the proposition that, "finding that a debtor who knowingly issues a worthless check and orally represents that the check will be honored has made a false representation within the meaning of § 523(a)(2)(A)"). Id. Of course, that is not the issue here. The issue here is exactly opposite. Here, the defendant issued checks and specifically told the plaintiff not to cash all of them at one time. Is that an intent to deceive? This Court does not believe so.[10]

As to Count II, based on the above, the Court finds that the plaintiff has not proved, by a preponderance of the evidence, that the defendant intended to deceive the plaintiff by promising immediate funds in exchange for a reduced purchase price. Similarly, the Court finds that the plaintiff has not proved, by a preponderance of the evidence, that the defendant gave checks to the plaintiff with the intent to deceive him. While the defendant knew there was not sufficient funds to cover the checks, she asked the plaintiff not to deposit all three checks at the same time.

## V. Conclusions

Because the plaintiff failed to prove all elements of § 523(a)(2)(A), the debts the plaintiff contend are due him from the defendant cannot be excepted from discharge in this case. Therefore, judgment shall be entered in favor of the Debtor.

A separate order will be entered contemporaneously with this Memorandum Opinion.

Dated: September 28, 2012   /s/Benjamin Cohen
                            BENJAMIN COHEN
                            United States Bankruptcy Judge

BC:pb

---

[10] This Court acknowledges that there has been considerable written in bankruptcy law, many from cases in this Circuit, and many from the State of Florida, debating the issue of, "when a person issues a worthless check, he impliedly represents that there are sufficient funds available to honor the check when presented for collection and that one who issues a check knowing that he has no funds to cover the check is without doubt as guilty of making false representations as one who actually makes an express oral false representation or one in writing." Matter of Perkins, 52 B.R. 355 (Bankr. M.D. Fla. 1985). However, as noted above, that is not the issue here.